Filed 7/11/13  P. v. Castanon CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B240764 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA051775) |
| v. | |
| MANUEL J. CASTANON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Kathleen Blanchard, Judge.  Reversed and remanded.

———

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Linda C. Johnson and Michael Katz, Deputy Attorneys General, for Plaintiff and Respondent.

———

An information, filed on April 6, 2011, charged Manuel J. Castanon with one count of second degree robbery (Pen. Code, § 211)[1] and specially alleged that he had used a firearm while committing the offense (§ 12022.53, subd. (b)). The information also specially alleged that Castanon (1) had a prior conviction for assault with a firearm (§ 245, subd. (a)(2)) that qualified as a strike under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and subjected him to a five-year enhancement under section 667, subdivision (a)(1); and (2) had served a prior prison term within the meaning of section 667.5, subdivision (b).

The jury found Castanon guilty of second degree robbery. It found not true the special allegation of firearm use. In a bifurcated proceeding, Castanon admitted that he had a prior conviction for assault with a firearm for purposes of sentencing under the Three Strikes law, section 667, subdivision (a)(1), and section 667.5, subdivision (b). The trial court sentenced Castanon to a state prison term of 11 years, consisting of the middle term of three years for the second degree robbery, doubled under the Three Strikes law, plus five years for the section 667, subdivision (a)(1), enhancement. The court stayed execution of a one-year term for the section 667.5, subdivision (b), prior prison term.

On appeal, Castanon contends that the trial court's omission of CALJIC No. 2.90, the standard reasonable doubt instruction, requires reversal of the judgment. We conclude that the court's failure to define reasonable doubt for the jury, which amounts to state law error, was not harmless under *People v. Watson* (1956) 46 Cal.2d 818, 836. We thus reverse the judgment.

## DISCUSSION

The trial court, which used CALJIC to instruct the jury, did not include CALJIC No. 2.90, explaining the presumption of innocence, burden of proof and defining

---

[1] Statutory references are to the Penal Code unless otherwise noted.

reasonable doubt, in its predeliberation instructions.[2]  The failure to give the instruction appears inadvertent, as Castanon represented that he did not have any instructions to propose in addition to those listed by the trial court and no discussion occurred regarding CALJIC No. 2.90.  According to Castanon, the failure to give the instruction is reversible error.  We agree based on the court's failure to define reasonable doubt for the jury.

Under federal constitutional law, the "due process clause does not require a trial court to use any particular phrase or form of words when instructing on" the presumption of innocence.  (*People v. Aranda* (2012) 55 Cal.4th 342, 355.)  When the trial court gives the "complete text of CALJIC No. 1.00, which inform[s] the jurors in relevant part that they must determine defendant's guilt based on the evidence received at trial, and not to consider the fact of his arrest or that he is being brought to trial[,]" and thus "express[es] the substance of the presumption of innocence, the trial court's failure to include the standard reasonable doubt instruction's admonition on the presumption of innocence d[oes] not amount to federal constitutional error."  (*Id.* at p. 356, fn. omitted.)  As to omission of the standard reasonable doubt instruction with respect to the People's burden of proof beyond a reasonable doubt, "the omission . . . will amount to a federal due process violation when the instructions that were given by the court failed to explain that the defendant[] could not be convicted 'unless each element of the crime[] charged was proved to the jurors' satisfaction beyond a reasonable doubt.'  [Citation.]  When the trial court's instructions otherwise cover this constitutional principle, the failure to instruct with the standard reasonable doubt instruction does not constitute federal constitutional error."  (*Id.* at p. 358.)  Nevertheless, "when the court's omission of the standard

---

[2]  CALJIC No. 2.90 provides, "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether [his] [her] guilt is satisfactorily shown, [he] [she] is entitled to a verdict of not guilty.  This presumption places upon the People the burden of proving [him] [her] guilty beyond a reasonable doubt. [¶] Reasonable doubt is defined as follows:  It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt.  It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge."

reasonable doubt instruction constitutes federal constitutional error because the principle, although mentioned elsewhere in the instructions, was not specifically linked to the elements of a charged offense, but the court has not instructed with a definition of reasonable doubt that effectively lowers the prosecution's burden of proof, the error is subject to harmless error review" according to the principles in *Chapman v. California* (1967) 386 U.S. 18, 24. (*Aranda*, at p. 363.)**3**

As for state law, "California law imposes a duty on the trial court to instruct the jury in a criminal case on the presumption of innocence in favor of the defendant and the prosecution's burden of proving guilt beyond a reasonable doubt. . . . A court satisfies its statutory obligation [under section 1096] to instruct on these principles by giving CALJIC No. 2.90 or CALCRIM No. 220. . . . [¶] . . . [¶] However, . . . a trial court's failure to give the *standard* reasonable doubt instruction does not necessarily constitute state law error. Although use of the standard instruction for such purposes is preferred, it is not mandatory. [Citations.] . . . [A] court's failure to give the standard reasonable doubt instruction does not amount to state law error when its substance is covered in other instructions given by the court. [Citations.] [¶] Under those circumstances in which the court's failure to include the standard reasonable doubt instruction in its predeliberation instructions does constitute state law error, such error is reviewed for prejudice under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 837 . . . , which inquires whether there is a 'reasonable probability' that a result more favorable to the defendant would have occurred absent the error. [Citation.]" (*Aranda*, *supra*, 55 Cal.4th at pp. 352-354, fns. omitted.) A court's "failure to define the term 'reasonable doubt' does not amount to federal constitutional error . . . [¶] . . . [but] . . . constitute[s] an error under state law." (*Id*. at p. 374.) An appellate court also reviews such error under the *People v. Watson* harmless error analysis. (*Id*. at p. 375.)

---

**3** Castanon argues that a violation of federal law as to the omission of the standard reasonable doubt instruction, even when the trial court does not give an instruction that lowers the People's burden of proof, constitutes structural error, not subject to a harmless error analysis, but recognizes that we are bound by *Aranda*, *supra*, 55 Cal.4th at p. 363. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

In this case, even assuming the instructions given to the jury covered the presumption of innocence and the People's burden of proof beyond a reasonable doubt on each element of the crime of robbery, the trial court's failure to define reasonable doubt constituted error under state law. (*Aranda*, *supra*, 55 Cal.4th at p. 374.) Thus, the question we must answer is whether the error was harmless under *People v. Watson*, *supra*, 46 Cal.2d at p. 836. (See *Aranda*, at p. 375.)

In *Aranda*, the Supreme Court concluded the trial court's failure to define reasonable doubt for the jury, either through the standard reasonable doubt instruction or otherwise, was harmless. There, "the [trial] court gave the definition [of reasonable doubt] when it read CALJIC No. 2.90 to the entire panel of prospective jurors, and repeatedly explained the standard instruction's principles during the three days of jury selection." (*Aranda*, *supra*, 55 Cal.4th at p. 376.) The Supreme Court noted, "Although not sufficient in itself to relieve the trial court of its obligation to define reasonable doubt for the sworn jurors during trial (and thus the court's omission of the definition in the predeliberation instructions constituted state law error), the court's remarks to prospective jurors can inform the harmless error analysis and further add some support to our conclusion that there is no reasonable probability that defendant would have obtained a more favorable outcome had the court included the standard reasonable doubt instruction or otherwise defined reasonable doubt during its predeliberation instructions to the jury. [Citations.]" (*Ibid.*) The Supreme Court thus "infer[red] . . . that the jury was not left to guess as to the meaning of reasonable doubt . . . ." (*Ibid.*)

We cannot make the same inference here. The trial court did not read CALJIC No. 2.90, or otherwise define reasonable doubt, to prospective jurors. Although during voir dire the prosecutor attempted to explain the concept of reasonable doubt to the jurors, he did not use the instruction's definition. Rather, his explanation in part stated that proof beyond a reasonable doubt meant that the jury was "convinced by the state of the evidence, the testimony and exhibits, that you can feel good and have this abiding conviction that whatever verdict you return was the right verdict"—a concept that does not fit squarely within the definition of reasonable doubt. Under these

5

circumstances, in which the court did not define reasonable doubt for jurors at any point in the proceedings, and the jury was provided an explanation that only in part coincided with the meaning of the standard of proof, we, unlike in *Aranda*, cannot "infer . . . that the jury was not left to guess as to the meaning of reasonable doubt . . . ." (*Aranda*, *supra*, 55 Cal.4th at p. 376.) The state law error in failing to define reasonable doubt thus was not harmless under *People v. Watson*, *supra*, 46 Cal.2d at p. 836.[4]

---

[4] Castanon also contends that the trial court erred by failing to sua sponte instruct on the lesser included offense of theft. Although theft is a lesser included offense of robbery, with robbery also requiring the use of force or fear, (*People v. Waidla* (2000) 22 Cal.4th 690, 737), the evidence did not merit a theft instruction. The victim testified that, Castanon, in taking his property, pointed an object at him and hit him on the side of the head with it. In addition, Castanon, with his cousin beside him, approached the victim in his vehicle at 11:30 p.m., demanded that the victim "'give me all you got'" or "'give me everything you got,'" searched the victim's car and then left with the victim's wallet, containing credit and debit cards, cellular telephone and eyeglasses. The deputy sheriff who came to the scene described the victim as "shaken up," "his voice—he was visibly shaken. You know, hands were trembling, his voice was very shaky, kind of up and down in infle[c]tion; scared, essentially." Castanon's cousin's testimony, if believed by the jury, would have supported the theory that Castanon was not guilty of any offense, not simply of theft. As a result, no substantial evidence supported the theory that Castanon took property from the victim with the intent to steal but without the use of force or fear. (See *People v. Breverman* (1998) 19 Cal.4th 142, 154 [lesser included offense instruction required only "'when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged'"].)

Castanon complains as well about the instruction under CALJIC No. 3.00. Although the instruction, to the extent it "describe[s] aiders and abettors and direct perpetrators as being 'equally guilty,' may be misleading under certain circumstances" (*People v. Mejia* (2012) 211 Cal.App.4th 586, 624; see *People v. Nero* (2010) 181 Cal.App.4th 504, 518), the court did not err by giving it here. The court also gave CALJIC No. 3.01, which told the jury that, under an aiding and abetting theory of liability, it had to evaluate Castanon's responsibility for the offense based on his own state of mind and acts. (See *Mejia*, at p. 625.) Castanon's claim that CALJIC No. 3.00 might have led to confusion in the jury's evaluation of his mental state, as opposed to that of his cousin, in determining whether he was guilty of robbery or theft does not suggest that giving the instruction was error. As noted, no substantial evidence existed that the crime committed was the lesser offense of theft, as opposed to robbery.

## DISPOSITION

The judgment is reversed.  The matter is remanded to the trial court for further proceedings not inconsistent with this opinion.

NOT TO BE PUBLISHED.


                                        ROTHSCHILD, J.

We concur:


        MALLANO, P. J.


        CHANEY, J.


7